The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and oral arguments on appeal. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award.
**********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 26 May 1995 as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. At all relevant times, The PMA Group was the carrier on the risk.
4. Plaintiff's average weekly wage was $220.00, yielding a compensation rate of $146.67.
5. The medical records stipulated into evidence are attached to the backs of the depositions of Dr. Campbell, Dr. McLaughlin, Dr. Holloway, Dr. Sos, Dr. Weaver, Dr. Klingensmith, Dr. Wiley Dr. Adams and Dr. Felton.
6. The issue to be determined is: Did plaintiff sustain an injury pursuant to the North Carolina Workers' Compensation Act, due to an event that allegedly occurred on 8 October 1991, while in the employ of defendant-employer?
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a twenty-seven year old married male with two children. He completed three years of college at Penn State.
2. Prior to working for defendant-employer, plaintiff worked in construction work and at Tyson Foods, Inc. cutting chickens.
3. At the time of the hearing, plaintiff was a resident of Canton, Ohio.
4. On 8 October 1991, plaintiff was employed with defendant-employer and was working a job in Raleigh, North Carolina. Plaintiff, at that time, resided in the Wilkesboro, North Carolina area. He had been working for defendant-employer one week prior to 8 October 1991.
5. Plaintiff was initially assigned to a labor job with defendant-employer as an assembler of steel studs, responsible for putting them in a brace so that they would fit together.
6. On the morning of 8 October 1991, as part of his job as an assembler, plaintiff had to lift a couple of metal studs. In the process, plaintiff experienced an onset of back pain.
7. Plaintiff did report the lifting incident to his employer. However, plaintiff did not seek any medical treatment at that time, even though his employer, Charles Bell, Jr., urged him to seek medical treatment, nor did plaintiff seek medical approval to stay out of work.
8. Plaintiff stayed out of work until 21 October 1991 without a doctor's excuse, then returned to work. Defendant-employer again urged plaintiff to see a doctor before returning to work, but plaintiff insisted he did not need any medical attention.
9. Plaintiff assisted his employer, Charles Bell Jr., in moving furniture from the Wilkesboro, North Carolina area to Raleigh, North Carolina, around Halloween of 1991.
10. Plaintiff left the employ of defendant-employer sometime in November 1991 without any apparent reason. Plaintiff did not seek any treatment for his back through the end of 1991.
11. The first time plaintiff sought medical treatment was when he presented to Dr. Walter C. Holloway, a chiropractor, on 19 February 1992 for a one time visit. Plaintiff told Dr. Holloway he had injured his back in October moving furniture.
12. Dr. Holloway recommended that plaintiff undergo a CPT clinical evaluation of the lumbar plexus. The lumbar plexus exam (a chiropractic study) was performed at Physicians Diagnostic, Inc. on 4 March 1992 and is a method under chiropractic science to perform dermatome analysis. Dr. Klingensmith was the chiropractor who performed the actual test. Dr. Klingensmith explained that the purpose of the CPT Sensory Examination was similar to that of an x-ray or MRI. The CPT test showed no evidence of neurological insult at the sensory level. If there were a disc herniation that produced nerve compression on any nerve root, Dr. Klingensmith would have expected to find a specific dermatome level response. The test results did not reflect the patient's subjective complaints and suggested a soft tissue injury, such as a lumbar sprain or strain. Dr. Holloway referred plaintiff to Dr. Charles Wiley for the CPT lumbar plexus test to determine if plaintiff had a disc herniation. The test results were essentially normal, e.g. no disc herniation suggested.
13. Plaintiff worked for Pro-Temps a week or two between February and May of 1992.
14. Plaintiff was examined by Dr. Richard C. Adams, an orthopaedic surgeon, in Statesville, North Carolina on 11 March 1992. Dr. Adams' physical examination of plaintiff led to a diagnosis of no disc herniation or any type of operable lesion. The results of Dr. Adams' examination was copied to plaintiff's counsel.
15. Plaintiff worked for Dairy Mart from January 1993 to 8 February 1993.
16. Plaintiff next worked for American Drew, from May 1992 to August 1992. Plaintiff was out of work from August 1992 to January 1993. Plaintiff filed a workers' compensation claim for a hand injury in May of 1992 while at American Drew. He did not seek any medical attention for his back, however, while employed at the American Drew Furniture Factory. Plaintiff left his job at American Drew Furniture Factory for reasons unrelated to his physical health in August 1992 and moved to the Canton, Ohio area. While in Canton, Ohio, and seeking permanent employment, plaintiff worked at a convenience store.
17. Plaintiff began work for U.S. Ceramic Tile in Canton, Ohio, having secured regular employment as of 8 February 1993. Plaintiff's job was that of a laborer at U.S. Ceramic Tile Company, carrying three hundred fifty to four hundred (350-400) forty-pound boxes per day in his capacity as laborer.
18. At the hearing, plaintiff alleged he left his job at U.S. Ceramic Tile because of a doctor's excuse. Most curiously, plaintiff alleged that his major job duty at U.S. Ceramic Tile Company was to operate spray guns that painted tiles. He insisted that he was not required to lift any more than twenty-five (25) pounds, and the twenty-five pound limit was invoked on very rare occasions. This is in direct contradiction to what plaintiff recited in his medical history to Dr. Watkins-Campbell when he presented to her on 9 September 1993.
19. Plaintiff did not seek or receive any medical treatment for his back from March 1992, when he saw Dr. Adams in Statesville, North Carolina, until 7 September 1993 when he was examined at the Emergency Room at the Timken Mercy Occupational Medical Center in Canton, Ohio. After that Emergency Room visit, plaintiff was referred to Dr. Watkins-Campbell of the Timken Mercy Occupational Medical Center. Dr. Watkins-Campbell's medical notes of 9 December 1993 include a reference to a nurse's description of plaintiff's job. Plaintiff's job is stated to be that of a carton handler who moves 350-400 forty-pound (40 lb.) boxes per shift.
20. Plaintiff's lack of candor about his job is not only inexplicable but leads the undersigned to draw the inescapable inference that plaintiff was seeking to obscure the true nature of his current job with U.S. Ceramic. The heavy lifting at U.S. Ceramic could well have been related to plaintiff's back problems.
21. It is important to note that plaintiff's medical records indicate that he did not seek any type of medical treatment from March of 1992 until September of 1993 for his back. Since September 1993, plaintiff has sought treatment for back-related difficulties with numerous physicians in the Canton, Ohio area. Plaintiff's Ohio physicians (with the exception of Dr. Sos) have indicated that plaintiff does not have such disc herniations. The only MRI study concerning this issue is somewhat self-contradictory although not decisively indicative of disc bulging or herniation.
22. Only one physician categorically states that plaintiff has disc herniation and requires surgery. That is Dr. Sos, who was educated in Spain and at the time of his deposition was board licensed only in France. His testimony is given no weight.
23. While the MRI Impression Study of 2 October 1993 suggests that there was a large central herniation at L4-5 and L5-S1, the body of the MRI report suggests differently. At the L4-5 level the radiologist noted that there was a mild anterior extradural intrinsic effect near the midline of the disc protrusion. Further, at L5-S1, it was noted that there was a protrusion without significant extradural extrinsic effect. Dr. McLaughlin underscored the inconsistency when he was treating plaintiff. There were no physical findings by Dr. McLaughlin or any other physician other than Dr. Sos that would be consistent with an MRI suggesting disc herniation.
24. All plaintiff's treating physicians agree that if the plaintiff had a disc herniation, there would be some signs upon physical neurological examination. Dr. Adams found none. Nor did Dr. McLaughlin.
25. If plaintiff had suffered from any type of disc herniation in October 1991, there would have been symptoms. Muscle atrophy or consistent physical neurological evaluations would be expected. According to Dr. Adams, plaintiff would have developed five or six major symptoms if he had suffered or developed a herniated disc in October 1991. Although not all individuals display five or six symptoms at once, an individual usually displays at least three or four. If plaintiff had sustained a herniated disc at L5-S1, his ankle reflex would have been abnormal. Plaintiff's ankle reflex was normal when he was examined by Dr. Adams on 11 March 1992. In addition, Dr. Adams believed that with a herniation at L4-5, there would be a weakness in the toe sensor. Plaintiff's toe reflex was also noted to be normal on 11 March 1992.
26. Plaintiff has not met his burden of proof in establishing by a preponderance of the competent, credible evidence of record, either that he sustained a disabling injury or had any period of disability with concomitant inability to earn wages of any kind pursuant to the North Carolina Workers' Compensation Act.
27. Plaintiff's lack of candor about his job at U.S. Ceramics as well as other indicia such as plaintiff's demeanor, lack of consistency and explanations which are not reasonable, suggests that plaintiff's testimony, which if believed would establish that he had sustained a disabling back injury on 8 October 1991, is simply not credible. It is far more likely, according to Dr. Watkins-Campbell, that any period of disability plaintiff suffered has come about as the result of his work at U.S. Ceramic Tile Company with its heavy lifting requirements.
28. Plaintiff's credibility is put into question not only because of his lack of candor regarding his work position at U.S. Ceramic Tile Company, but also due to his apparent ability to move furniture in late October 1991, together with his failure to seek any medical treatment for the event of 8 October 1991, despite urging by his employer. All of the above plus plaintiff's demeanor at the hearing support a conclusion that any back injury sustained was no more than a mild strain which quickly resolved.
***********
Based upon the foregoing findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Under the North Carolina Workers' Compensation Act, the plaintiff has the burden of proving by a preponderance of the competent, credible evidence of record that he suffered a personal injury by accident or by specific traumatic incident of the work assigned and that such injury arose out of and in the course and scope of his employment. Plaintiff has failed to meet his burden and to establish that he suffered any disabling injury, as that term is defined as a result of the lifting incident of 8 October 1991. N.C. Gen. Stat. § 97-2(6).
2. Defendants are not responsible for the payment of any medical treatment received by the plaintiff because such medical treatment did not have any relation to, or effect a cure, or give relief or lessen any period of disability (plaintiff was not disabled) for the event of 8 October 1991. N.C. Gen. Stat. §97-2(19).
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Plaintiff's claims for disability benefits, pursuant to the North Carolina Workers' Compensation Act are hereby DENIED.
2. Each side shall bear its own costs, with the exception that defendants shall pay for the deposition expenses of the medical providers deposed.
 S/ __________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ RENEE RIGGSBEE COMMISSIONER